The Illinois County Court and Third Division is now in session. The Honorable Justice Jesse Reyes is presiding. Good morning, ladies and gentlemen. Good morning. May I have a seat, please? Don't worry, we passed the test, so we don't have to worry about it. Might I get a follow-up case, please? Bremel v. Quedas. I would, uh, counselors who are going to be arguing this matter, please step up to the podium. State your names for the record and the party that you represent. Good morning, everybody. My name is Bert Lang. I'll be representing and arguing today, why don't we, for Dennis Bremel, the appellate in this case. Okay. Good morning, your honors. Ted Gauss at GAUZA. I'm here on behalf of the appellee's defendants, Bruce Ruff Meal and Quedas, Inc., but the former entity, Quedas, Inc., because there was one reconstituted, as we noted in our brief, subsequently about a year ago. Okay, so 15 minutes apiece. Time for rebuttal? Yes, Your Honor. How much? Five minutes. Five minutes, okay. And, gentlemen, I'm going to admonish you now, all right? The only reason this case is here is because of damages. Liability has been established, all right? And also, we've read the record. We've read the briefs, so we're familiar with the facts. So just limit your arguments to the pertinent issues of law that you feel that we should be aware of. I don't want any characterizations. I don't want any innuendos. I don't want any type of other non-appropriate language utilized during this oral argument. I don't stop counsels during the oral argument, but if I hear anything that I think is deemed inappropriate, I will stop you. Do you understand? Do both of you understand? Yes, absolutely, Your Honor. All right, let's proceed. Thank you. The facts are as simple as you set out that you saw. My client wanted to buy a piece of land in Chicago, vacant land, signed a contract, had attorneys representing them. The contract had a specific provision concerning what damages are available. And it says, if you look clearly at the contract, it talks about in paragraph E, it says disposition of the earnest money. And the disposition of earnest money says that in the event of default by the buyer, the earnest money list expenses and commission of the listing broker shall be paid to the seller. If seller defaults, the earnest money at the option of the buyer shall be reformed to the buyer, but such reforming shall not relieve seller from the obligations of this contract. Well, counsel, didn't the trial court award the earnest money back for the breach of contract? That was, yes, it did. And that was held in escrow for some time, and that was my client's own money. So to show. . . And was it placed in an interest-bearing account? Yes, they're clear-coded in their tiny interest-bearing account. There's really no damages available. Keep in mind, Judge Walker followed, and one of the paragraphs is his 83-paragraph opinion, that my client is a creditor at that time. And that was after the deposit of the money with the clerk of the circuit court. So in that opinion itself, the Judge Walker said my client is owed money or owed the property, something. To win on a fraudulent conveyance statute, we have to become a creditor, which he found after a two-day bench trial. I'm sorry. No, the only thing I was going to follow up with is, but the award of any damages was not under the UFTA account, right? There was no damages awarded, but the UFTA Section C allows damages because it's a fraudulent statute developed throughout the entire United States. It can't figure out any possible fraud that anybody can come up with. So of course, as a way of that statute, the Uniform Laws Committee set up that very general section. Yeah, because of that catch-all phrase. Yes. Right, we're familiar with that. So besides the earnest money, how would you calculate damages? For example, I found on page 20 of your brief that you had fees and costs of $121,000. On page 22, it talked about $157,000. So presumably, that would sort of be like compensatory damages. And then are you also seeking punitive damages? Do you believe that UFTA allows punitive damages recovery? And how would you calculate that? Yes. So the answer is, since the statute doesn't specifically allow attorneys to use, we looked at it that there are cases throughout the country that says you can have a factor of the litigation strategy of the defendant or the amount of attorney's fees spent or expended by a plaintiff's counsel as an element or a factor of punitive damages. And there are cases here in Illinois to discuss that and approve that. Which cases are those? So there's one case. We cited those in our brief. Isn't it the only case, BOA versus W's Waste Management, where basically it says neither attorney fees nor punitive damages are recoverable? Right? Doesn't that case, the only case on this issue, exclude both attorney fees as well as punitive damages? They specifically say we declined to follow cases from other states for attorney's fees or punitive damages for fraudulent transfer claim.  I agree that's what the case says on one of the last pages of that opinion. So what is it decided wrongly? No, because in that case, don't forget, they were also enforcing their rights under the Kansas judgment. And in that case, they did award attorney's fees, and they awarded a significant amount of attorney's fees in that particular case. They predicated the award of attorney's fees on the Kansas judgment. So many times, appellate courts do grant attorney's fees, but there's different statutes that they could award attorney's fees on. So in the equitable sense in that particular case, since they're giving attorney's fees for the enforcement of the Kansas judgment under their fraudulent statute, they elected not to award fees here. It's like a double award of fees. So I don't think that case is really helpful in our case because we don't have two statutes or two states that we're enforcing our right for fees on. Again, we're not asking for fees, but punitive damages, you can look at many factors. Attorney's fees are only one singular factor you can look at to award attorney's fees. Are you trying to cloak attorney's fees in the punitive damages? Because here we don't, I mean, under the American rule, there's no, you know, fee shifting for attorney's fees, right? I mean, like some sort of statute. Like in Illinois, whenever we shift attorney's fees, isn't there an actual statute where there's some precedent for doing it? Do you see any issue in kind of cloaking this attorney fee issue into this punitive damage issue? Well, I understand what you're saying. I agree with that point that we're trying to cloak attorney's fees. However, there's been a... You believe that you are trying to cloak the attorney's fees into the... I agree with that. But I'm just saying it's one singular factor. Many factors take into consideration the award of punitive damages in the case. You're saying that the amount of punitives could take a look at how much was expended on attorney fees. Yes, and we've coupled that with the litigation strategy of the defendant. Here the litigation strategy of the defendant was very clear. Ten years' worth of litigation, third-party lawsuits against the brokers, both brokers, third-party lawsuits against the investor, and nothing to do with the case. You just look at the entire, they filed something in bankruptcy court. The entire amount of attorney's fees were looked at intertwined with the litigation strategy of the defendant in this case. And that's, the courts have always looked at litigation strategy. So we should, through punitive damages, punish the defendant for the litigation strategy? I mean, like, I'm also, I'm kind of struggling to see how this case is just different from your regular garden variety fraudulent transfer case. That, you know, even if UFTA did have a punitive damages clause in it, which it doesn't, how is this so much above and beyond extraordinary to impose punitive damages? Well, the court didn't consider punitive damages at all, and that's a big problem, the lower court. And so they did find, if you look at Judge Walker's long, detailed opinion spanning 83 paragraphs, it's clear how he went through every element of the fraud, which the plaintiffs, through Mr. Dozza, hindered the case, hindered the transaction, canceled the transaction for no reason, and he found that their behavior was fraudulent. And he did everything to hinder and delay this transaction. His words were unapologetically clear. They're fraudulent intent both in fact and in law, the fraud that took place against my client. So if you're not awarded attorney's fees slash punitive damages, what other remedy do you have pursuant to the UFTA to seek or to prevail under? Well, the tying in with lack of no attorney's fees or compensatory damages or punitive damages, then of course we have to get specific performance. The general rule of law is that if there's an inadequate remedy on law, and if the court found that awarding punitives, attorney's fees, or compensatory damages is inadequate here, which it did, and they found us to be a critter, you must, the lower court, erred by not awarding specific performance. But the judge didn't grant you specific performance because he said in 2015 you should have filed a motion for reconsideration, and since you didn't do it on a timely basis, the judge said took away the specific performance, correct? Well, there's two answers to that, Justice Reed. Number one is that in 2015 when Judge Alderama denied or dismissed that count in the first amended complaint, that count was directed against Quaidus. Quaidus at that time, and he said in his opinion, Quaidus already conveyed the property out to Shamil. So of course Judge Alderama was correct in his decision because he couldn't order a party that doesn't have title to give the property to my client. Which is why the 2615 was granted. Right. But why wasn't it timely vacated? Well, we have to wait seven years until the trial in 2022, seven years later, is the first time when Judge Walker makes his opinion saying this is fraud. And that's when he said the property has to go back from Shamil to Quaidus. So in 2022 is the first instance after the order in 2015, seven years earlier, that it could have done something. His order, though, was clear. I didn't have to do anything under Section C of the Fraudulent Conveyance Statute. Because it wasn't brought to him, right? Because he was just following Judge Alderama's orders. I mean, the first time he's finding out about it is when the trial is happening before him. Yet the plaintiff should have known about this before trial and addressed it, right? No, no, of course not. Because the first time at trial when he makes his opinion, Judge Walker, he finds a fraud that was fraudulently conveyed from Quaidus to Shamil. So until that conveyance was undone, I had no reason to try to vacate that 2015 order. There was nothing, no information, no new information I had. No laws changed. You didn't make a mistake until Judge Walker made that opinion in June of 2022. And you had no idea this factual scenario would be coming up until after the trial? Well, I had on my facts on the Second Amendment a verified complaint. There was nothing to do until he makes his ruling. And when he makes his ruling for the fraud, that's when he transferred the property back. I can't. He's going to deny my motion to vacate this. The property is still in Mr. Shamil's name. So you still have the same property you had in 2015. It's still in Shamil's name. Until he makes his order in 2022 when he ordered the property transferred back from Shamil to Quaidus, it's the first time that that account will be alive again for a specific performance. Because now it's in Quaidus' name. And that's what we sued for, to have Quaidus transfer the property pursuant to the terms of this real estate contract. And that's what Section C of the Fraud Act says. That's what we have a right to do under the breach of contract, which we want as well. And that's what the form says in the breach of contract. We have a right to not only get the earnest money or use it for the property, we have the right to compel the contract to be enforced. Right? It's the first time we had that right to do that. But the denial of the motion to reconsider by Judge Walker, okay, you became aware of that during the litigation at the trial level, but you don't address it in your brief on appeal. So should we just deem it as being forfeited? No, no, of course not. Well, if you didn't tell us about it, how are we supposed to know about it? Well, the judge relied on the 1901 Supreme Court case of the SBAT v. Wilson. And if you look at that particular case, it's more than 100 years old. The SBAT is when the seller is suing the buyer for specific performance after they kept their earnest money. And there was a dispute about a piece of property in that land purchase. They wanted a little sliver of land coupled with an option of another seller of another piece of property. So, of course, in that case they thought specific performance by the seller against the buyer is not a good idea because the buyer didn't want the property anymore. And he didn't ask for specific performance. They said keep the earnest money we're calling today, keep the $100, which is now probably a million dollars today, of course, with inflation. But, you know, they said keep the earnest money. We'll forfeit the earnest money, the buyer says to the seller in that case. In that case, that's what Judge Walker relied on, that case. And I talked about that in my motion to reconsideration. That case has nothing, no support for denial of performance in this case. But why wasn't it in your brief? We discussed the SBAT case. You did? Yes, I did. All right, well, while you're looking for it, let's move on to another issue. So we have one case in Illinois, the Bank of America versus WS Management, Inc. And then we have all these other cases outside of Illinois that address this issue with regards to punitive damage violations under the UFTA. Is there anything else? I mean, should we consider the out-of-state cases, or should we rely on Bank of America? Well, like I talked about before, Bank of America, I think, is not helpful because they award an attorney to you because they're trying to enforce a Kansas judgment. That was really the focus of that particular case, not the case here. There are a number of states here that I outlined in my brief. There's four states, Connecticut, Virginia, Ohio, and Wisconsin, that have allowed the statute to be enforced as I suggested it be enforced. But what we're also forgetting is we have the right of compensatory damages as well. And the court found in paragraph 81 and 83 of their complaint that we established compensatory damages. Mr. Logan and Mr. Brummel testified they were going to make a profit between $170,000 and $200,000. Now, what did that mean exactly? What was the basis for that testimony? Were they going to build condos and sell them, or were these going to be rental units? Or how were they actually calculating their expected profit between $170,000 and $200,000, which they called a 20 percent profit margin? So on page SUPR 214, he discussed that they were going to construct a six-unit condominium in the lake. So he discussed that in his testimony, Mr. Blakeman. That's his wheelhouse to build and develop condominiums. And he testified his experience in doing that at the trial. And that's on the pages SUPR 209 through 215. And he discussed that there's virtually no cross-examination on that. They don't have a witness. It's unrefuted, uncontradicted testimony that he was going to build these condos. And anyways, as your Honor, I think it's just that time just stood in earlier cases here. I cited that in my brief, the case that you awarded speculative damage in a very similar case. Is that the Shepard case? They weren't speculative damages, right? They were damages that were reasonably certain to occur. Yes, the Shepard case. Are you talking about the Shepard case? Yes, ma'am. And in that case, there was a lot more in there, including the multiple listing services, these comparisons between similar buildings of the same area. In your case, the trial judge found it didn't necessarily, I mean, I'm thinking implicit in this finding, it doesn't rise to the level of what was shown in Shepard by not only the facts, and so he did not find lost profits, or he found the evidence falls short of establishing lost profits. So if he found that plus the lack of specific performance, I mean, how does this rise to the level of punishing the defendant through punitive damages? Well, we have a case where the court found fraud. They're not punished at all. There's not one element of punishment at all. The earnest money was not there to begin with, so they walked out. So in every fraud case, we should be considering punitive damages? We have to consider at least something, some kind of damage, a specific performance, compensatory or punitive. The Illinois Constitution guarantees every citizen that right for every wrong is a civil remedy, and here the court clearly found that my client was defrauded. He's walking away with just litigation expenses, and they get to keep their property, and they can sell to whoever they want. It's still in their name. There's no punishment for the fraudsters in this case, and the victim walks away empty-handed. Under the law, though, 735 ILCS 5-2-604.1, to recover punitive damages, a plaintiff must seek leave of court by motion to plead such a claim no later than 30 days after the close of discovery. Was that done in this case, or did you raise the issue of punitive damages after the trial? Well, my understanding of that statute is for personal injury cases. 604.1 is only for PI cases, Justice. And so we didn't have to do that, and it was never brought up. We never faced a motion to strike for not having that in there, for not having a request. But this is not a personal injury case at all. It's a fraud case, and you don't have to seek relief from the court under the Code of Civil Procedure for asking for punitive damages on a non-personal injury case. But in terms of the mathematical accuracy, the courts have always been consistent in Illinois and the Federal Court and Bankruptcy Court, in this state at least, that you don't have to have mathematical certainty to establish compensatory damages for lost profits in the future. Inherently, lost profits are always, to some degree, speculative, because you're looking at future conduct. I would be making this kind of money in the future. In a couple of your cases that you wrote opinions on, Justice, it shows that. You wrote that in your opinions with Justice Reyes, that we have speculative damages automatically for future conduct, that he's going to take vacant land and do something with it, build condos. That's correct to a certain point, but here the testimony that was provided regarding the lost profits, there were no numbers that were compared. There were no comparisons. So, I mean, it here appears that it is purely speculative, and he just testified about his experience in the business, but it never provided any numbers, never provided any comparisons in terms of other properties that might have been equal to the one at issue here. So aren't these lost profits, the lost profit testimony actually speculative? No, they're not, and again, if you look at that, I agree that it's not the long testimony like in the Shepard's case. I can see that. Shepard's case is a little bit different, though. They had experts on each side. They were contradicting and refuting the plaintiff's testimony. We didn't have anything like that in this particular case. As a matter of fact, the cross-examination was about two questions, and Mr. Latham did testify about his experience, that he was a real estate broker since 2000. He background includes transaction in real estate broker management and development, acting as a general contractor and developer. He did a preliminary study figure, and he did this. He did some other kind of conversion units. He has these development abilities. He surveyed the property. He did his environmental sketches, did preliminary profit sketches. He figured out how much he was going to spend in construction costs. He added the general contractor profit and fees. Did you provide the trial court with any of this detailed information? Yes, I did. SGPR R214 to 215. Did you lay out specific details in terms of the costs for the construction, the value of the properties in the area where this property was located? Some of those details, not all of them, some of those. But if you look at R214 to 215, it's in there, and there was virtually no cross-examination on that. And then also, Mr. Bono also testified in SGPR R86 that he looked at specific property plans, addressing environmental issues, securing the bank loans for the land redevelopment and the construction of the six condo units. So there was enough testimony to get to that level that they were going to do something with that land, and they were going to build six helmet units. So I think my time is up. Okay. You're going to get an opportunity to rebut. Thank you. And we'll allow counsel an opportunity now to argue. Okay? All right. I know we went over a little bit, so we'll extend the same courtesy. All right? Okay. Good morning again. Ted Gause on behalf of the appellees. First and foremost, and I think this Court already touched upon this, and it's not even disputed by Mr. Ring, the Illinois Fraudulent Transfer Act does not specifically provide in any shape or manner for attorney's fees, punitive damages, or in this case, specific performance. The UFTA was essentially a collection statute to be used against judgment debtors. This count came up after the July 10, 2015, ruling by then-Judge Valderrama that no specific performance counts could proceed against either Quaidus, Inc. or Bronislaus Camille, and that decision was with prejudice. As this Court already noted, seven years or more passed, there was no motion for reconsideration. It was not preserved. Judge Walker was very specific on this, and that is why in his discretion, and that being a court of chancery, he did not allow them to try to come back with it. Shouldn't we allow punitive damages? I mean, the other jurisdictions do, so in this case, since there appeared to be a violation of the UFTA, shouldn't Illinois allow them? Shouldn't this Court consider that? It would be nice if they wrote the statute that way, but they didn't, Your Honor. What about the catch-all phrase? Any other relief the circumstance may require? That was already, as I can read from Judge Walker's under-equity-in-conscience, whether it was warranted in the circumstance. He did not find it was warranted. He had the discretion. And I forget which case it is by name. In Ohio, the statute specifically allows for punitive damages. So if there's no more legislation, Your Honor.  I'm sorry, Your Honor. I apologize. When Judge Walker was talking about that equity and conscience, that pertained to the specific performance, right? Yes. And that didn't pertain to the punitive damages request. Yes. Correct. That is correct, Your Honor, but he looked at Bank of America and to the statute and said there's no such relief provided by statute, and the Bank of America case seemed to address it that it did not so provide. As I was trying to point out, in Ohio, they don't allow for it. They specifically put it in the statute. So it allows for such a remedy. Don't all other fraud sorts of causes of action allow for punitive damages? Why would UFTA be any different? Because he didn't say so specifically, Your Honor. But we have the catch-all phrase that Justice Reyes just read. That any other relief the circumstance may require. Why did they put that in there? I'm going to try to read into the Illinois statute or what the legislature said, but they did not specifically put it in. And they could have very easily put it in, Your Honor. It allows for attorney's fees if there's such a finding. They could put it in there very easily. It allows for punitive damages. They've done it in other statutes, as Your Honor pointed out. I forget the citation, which punitive damages for personal injury. They've done it in other statutes. They could very well have done so here. But, again, the Fraud and Transfer Act was intended to be more of a collection post-judgment remedy. What is your basis for saying that? Quite honestly, it's the first time I've ever seen a researcher's any attempt to use the Fraud and Transfer Act in a situation like this. It commonly comes up judgment that is trying to move real estate after there's a ruling. But even then, it's sometimes not deemed dispositive because, not to say there was a In the Meyer case, federal bankruptcy court, you know, they were doing estate planning and they transferred some property during the course of a bankruptcy, and it was challenged as being a fraudulent transfer. And the court said no. There was another reason for it. So it doesn't mean that just because certain facts come up and say we think it's a fraudulent transfer, it doesn't mean that necessarily it is. In this case, again, what counsel, they do admit this in their briefs, and they admitted it to Judge Walker. There is no specific provision in the State of Illinois there. They do it in other statutes. If they wanted to, they could have done so. They did not do so. For an appellant now to ask his court to essentially re-write the statute and imply something, I think, would set a kind of dangerous precedent because it invites the rewriting of every statute. If there's a catch-all, well, what if? Maybe this is what they thought. The legislature has perfect opportunity to put it in. They did it in other statutes. They didn't do it on this one. So what is that catch-all phrase used for if we can't use it for attorney's fees or punitive damages? Well, same as most court orders at the end say, and for any other appropriate, when you do a judgment over it, and for any other appropriate relief, what does that mean? How wide is the image? What are some examples of appropriate relief under that catch-all? If, for example, somebody gets a judgment for $10,000 and they don't pay, you can come back and say they haven't paid the $10,000, and they've issued a citation, they've frozen this bank account, then they can go ahead and do the order for turnover. However, that's enforcing the judgment that is on record that's already been ruled on. It allows the execution order of the issues there. It does not open Pandora's box and say, okay, now we're going to talk about attorney's fees, punitive damages, we're going to do speculative damages as to what this project may have resulted in. It does not open that door. It allows the execution of that judgment. It does not allow to go beyond the statute or beyond that order. So I want to ask you this. The court returned the earnest money, which was the plaintiff's own money, right? I mean, they were entitled to that because they put that forward. And there was a breach of contract, but yet plaintiff now is kind of left with no remedy, right? Because he got the earnest money, he got his money back, right? But yet there was a breach of contract, and now the plaintiff is left just out there holding her hand saying, well, not to relitigate the case, but in 2013, normally, and I've done real estate for about 30 years, normally if somebody says they have an enforceable contract and it's not going to file, we file an emergency injunctive action and say, hey, we have an enforceable contract here. We want to have specific performance, and this is the basis for it. And it gets resolved in a couple months. Here, plaintiff waited six months. He didn't bring an action then for such relief. He brought a respondent and discovered, trying to find out, it was sort of a wonder. And the reason for that was quite obvious. I don't think it's disputed. Mr. Gremmel admits he didn't have the money. He never had the money. And then he was just looking to enforce the contract, and he says he didn't even admit it in Rule 216 and interrogatories and anon testimony that he had no ability by himself to do so. So rather than take the normal remedy for specific performance in 2013 or early 2014 and come in front of a court and say, hey, I have an enforceable contract and I can perform, he didn't. And it's quite obvious why. He knew he couldn't perform. He didn't have the ability to perform. So he had the remedy earlier. Counsel, we already have a liability determination, so this is all irrelevant. Understood, Your Honor. But asking why we're here 10 years later. Well, I was asking about the remedy. The remedy that they would be entitled, since there was a breach of contract, they should be entitled to some type of remedy, right? And are you saying, yes, if it had happened in 2013? No. What I'm saying is that when you're seeking a remedy, it should be timely sought. It's not like that's what a statute of limitations is. It shouldn't be sought years after the fact. And remember, the initial things, they never. Too little, too late? Yes. All of this was presented in 2015. Judge Valderrama ruled on specific performance with prejudice. These arguments were made to Judge Valderrama. They could have been preserved for appeal. They were not. They weren't even raised at trial, only it seems to be raised after the fact. This is what Judge Walker pointed out. I should add, if the court wasn't aware, Judge Valderrama had the case until the eve of trial, when he got appointed to the federal bench, and then the thing held for about nine months, and Judge Walker got it, like, maybe a couple weeks before the trial date. So Judge Walker was not. What about his argument about they didn't really find out about it until after the fact? The ruling? That was the first time they. . . Until after. . . That's something that's on Mr. Ray and his clients to address with the court. I don't know what he means by that. I don't even want to speculate when they found out. It's now my job to know what the opposing counsel and their clients found out or believe. Mine is to represent my client. And this was evident. This thing had been litigated for a long period of time. In fact, quite as did go through bankruptcy hearings, that the fraudulent transfer issue was raised with it, and there was no asset determination. So the bankruptcy court did not believe that it was a fraudulent transfer of the asset. And that's something that in. . . That was in 2018 and 2019. I forget the date. Judge Valderrama took judicial notice of that determination. So if there's no monetary remedy here for a plaintiff, what about providing the plaintiff with an opportunity to purchase the land as originally was intended? That would require a ruling of specific performance, which would go contrary to prior rulings, not only of Judge Valderrama, but it was not also deemed a fraudulent transfer by the bankruptcy court. So, again, Your Honor. The only matter that's on appeal here. I'm sorry? The only matter that's on appeal here. Yes. Has nothing to do with the bankruptcy court, right?  It's the findings made by my brother, Judge Alan Walker. That is correct. That is correct. Your brother-in-law, I call him. Yeah. So. . . Not really, though. Sorry. So, yeah. I think maybe at one point Judge Valderrama did, I remember in court, mention, he says, what the remedy on this is now that the specific performance and all is stopped. Well, I believe the attempt to use the Fraudulent Transfer Act was to circumvent a case that had effectively been lost and there was no other remedy. Then they brought in the Fraudulent Transfer Act, and Mr. Eames, probably more clever than I am, made a very astute argument trying to work that in. But, essentially, the decision had been made, the specific performance remedy. It was denied with prejudice. It wasn't asked for reconsideration. They could have appealed it. Instead, they filed another avenue. There was no 304A language. I'm sorry? There was no 304A language. This was one count out of a multiple count complaint, and there was no 304A language requested or delivered for them to have filed an appeal back then. They could have asked, Your Honor. They didn't. They could have simply said, because when the specific performance remedy went away, against both Quaidus and against Hameel in July 10th of 2015, they could have just asked for the 304A language and appealed it and said, Hey, we believe we're entitled to specific performance. But they didn't have to do that. You can wait, and you can appeal everything at one time. Appeals are expensive, aren't they? Yes. But what about when, Your Honor, they changed the theory of the case then to a fraudulent conveyance or a fraudulent transfer act claim? What about the lost profits? That's highly speculative. I don't want to address things outside the court. At one point, this property probably was worth twice its purchase price value. It is, I think, because of the current market conditions and we've looked at it, it may be significantly less than there. Quite honestly, this case wouldn't have been litigated other than the fact that the land value skyrocketed soon after. It's just the location of the property thereafter. Condos are not allowed by the zoning. It would have been like a three-unit condo. It's not like you could put in 20. I think the current alderman, because it has changed, it now requires 20% be for low-income housing, which may also be prohibitive to developers to build, you know, if it's only a three-unit. So it doesn't have – it may have some momentary value increase. That increase may still be there, but not as significant as everybody thought. But at the trial, was there enough evidence presented, detailed specific evidence presented as to the lost profits? No. We just had – I think the best that we did was Mr. Larson going, well, maybe if we did this, we'd get this. It was speculative. It was hypothetical. There was no exhibits presented. There was no, hey, we have a development expert that the zoning will allow us to build this, so if we barter for this, this is how much we make. None of that, Your Honor. There was nothing other than a hypothetical discussion by Mr. Leufman, what he thought it may mean. And I think he even acknowledged that that's kind of a guess. I think he used the word guess, his best guess, because he didn't know. And you just don't know from the circumstances what that value of that property, if developed, could be. But then again, you get into the argument of speculative damages. It depends. Like I said, what the prior alderman, because he redistricted, may have allowed versus the current, that has changed significantly. And the market, I mean, rates have skyrocketed. Anybody buying this property, just for the record, would have to bring cash because there still is an EPA issue. There is storage tanks on the property that need to be removed. Somebody coming in there, if you're going to build a three-unit and you're going to dig it out, then maybe it's cost-effective for you. But just for somebody to dig that out wouldn't be. So are the vehicles still in the lot? They were mostly removed because I think the alderman's office intervened and we were trying. I think some of the neighbors, one of the neighbors, how to say this, and there wasn't something that was disclosed until later on and then they notified and made notices. We've had that issue over the years to keep it. And as we also put out, the property value was increased during the period of this whole litigation by Father Bruno because he did have the property, the building demolished. The building had been, when we started the litigation, it was a fire. It damaged about half the building. It was beyond. It was cold and bad. It was boarded up and secured. And then it was decided, because he couldn't get even insurance on it, to build, and this he testified to, it was bulldozed, but that was just the top. They never dug out the tanks. So whoever takes this has to take it subject to the EPA issues underneath with it. All right. You want to sum up, Counsel? At the end of the day, Your Honors, the statute does not provide for the remedies being sought here. Judge Walker indicated that. They've presented no legal basis, no statutory basis. They looked at other states, and as I mentioned, the one statute that I found interesting was the Ohio, which specifically provides for punitive attorney's fees in there. So they could have done this. They've done it in other statutes here in Illinois. There's a reason they didn't. The Bank of America case is the only one out there, and even counsel in their briefs here and at trial admitted this is a case of first impression. And to be perfectly candid, I'm not sure, I think I put in my brief, that this was a judicial exercise and a little bit in futility because we went through something which had no remedies because of prior rulings of the court. And I think that's, as this court has recognized, why do we, it serves no purpose. There were already rulings that hadn't been challenged. They could have been, but they went through an alternate theory in an attempt to evade the court or I don't mean evade or circumvent, but find another avenue to try to get the remedy they could not get under specific performance. And then they reached out to the Fraud and Transfer Act, and the results are we're all here today. All right. So what's your request? What are you looking for? The Judge Walker's ruling be affirmed and that the rulings stand. Just for the record, we never confessed to the return of the earnest money from the clerk's office. It was deposited, $10,000 was deposited to the clerk's office, and we never posted the return of that funds. One other thing, and this counsel for the appellate was pointing out, well, we've spent all these years in litigation. And I think Judge Vellarama said, you didn't have to. It's a choice. If you're going to go forth on a case, it's a choice. You don't have to. You spent funds seeking a remedy that you may not have. It's a choice. That's why we have the American Rule. Nobody forced them, after the 2015 ruling, to keep going. Nobody required them to do so. Okay. Thank you. Thank you, Your Honors, and thank you for your consideration. Okay. Ricardo. Thank you. Just to answer a couple of questions since I had a few minutes. We discussed the SBIRT in our reply brief, and the reason, of course, why we didn't do it in our opening brief, because it didn't support our position. But the counsel and the appellate brief discussed it, so we replied and we distinguished that case as well. Counselors bring up a lot of points. Nothing's in the record about the development, alderman changes. There's nothing in the record of the two-day trial about that at all. But keep in mind that the UFTA, UFCA, provides in Sections 11 and 12, the final two sections of that statute. They said that unless displaced by the provision of this act, for instance, of the law on equity, including the law on merchant, the law relating to principal and agent, estoppel, laches, fraud, misreps, duress, coercion, mistake, insolvency, that is provided. And they said this act shall be implied and construed to effectuate the general purpose to make uniform the law with respect to the circuit of this act among states enacting it. And that's what Illinois said. Illinois says look at other states. And they said that clearly in paragraph 12, the last paragraph. So it's a uniform fraud act across the entire country. And they're not displacing or getting rid of the general fraud principles by this act. It's a supplemental act when actions happen like Judge Walker ruled in our favor. So that should be looked at as well because it's so broad, that statute. Thirdly is counsel admits today that the value amount. And, of course, they're going to want to profit from the increase in value. Of course litigation takes time. But as Judge Justice Walker discusses, you know, there was no 304A language in any opinion or order prior to the last until the final order. And 304 actually has a statement in the final section of that before B starts. It says that any order can be modified or vacated at any time before final judgment. And so that is a catch-all. And when you have Illinois Supreme Court Rule 366, it allows your honors to make any changes to court orders. And your honor, actually, Justice Reese, have you done that in a recent case just that came down, I think, in the case of hidden minted property holdings versus swipes, 202-1, Illinois Appellate First, 191-153U. That was a broad case, too. When you used that 366A-5 to modify a previous order in the lower court, that's found on page 63 of that opinion. So that Illinois Supreme Court Rule is used sometimes by your honors, have done so, to modify the orders that were not clearly set forth to give the equitable provisions of the fraud. And that was a fraud case as well where Justice Lampkin was a writer of that, another member of your panel. But you were on that panel as well, Justice Reese, and the retired Justice Gordon, and enforcing and allowing punitive damages in that case. That was a fraud case. Of course, it was consumer fraud and regular fraud, not this fraud. But, again, as Justice Walker points out, fraud is fraud. You can put it in any different statute. When the lower court finds fraud in law and in fact, there should be some implications for that. And that's why we're here today. Mr. Lampkin clearly testified, and Judge Walker found his testimony to be evident of some damages. He said that in paragraph 81 through 83 of his trial court opinion. There is damages. He just finds it to be speculative. And it's not speculative. Anything in the future has to have some inherent value of speculation. But, you know, they didn't do any cross-examination like in the other case you handled earlier this year. And we didn't have to go further. If they would have had evidence for refuting that or contradicting that or more cross-examination, yes, more facts would have come out. But we testified the way he did. They just accepted that, and that's the end of that. So if you look at the catch-all provisions also of our complaints, the First Amendment and the Second Amendment, we ask for any other relief that we can get. And so speculative performance should be awarded in this case. We still want the property. Mr. Bremel testified at the trial that he has the ability. If I ask him at trial, one of the questions is if you, and that's in SCPR 100, if the judge orders you to buy it, can you buy it quickly? And he said yes. And Lakeman testified they have the cash. It's a cash deal. They could buy it right away. So they're ready, willing, and able to buy this property. They can redevelop or do whatever they want to. Resell it or whatever. Construct apartments, condos, whatever they want to do. It's up to them. But they want to buy this property. They're still here today with me trying to buy the property, and that should be awarded. Thank you. Yes. Thank you very much. I want to thank both counsels for a well-argued matter. Mr. Korten will take this case under advisement, and we are adjourned.